IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 09-2711 |
| QAHTAN MOHAMMED ALKABSH and AHMED ALHAJJ, | ) ) ) | |
| Defendants. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Before the Court is a Motion for Default Judgment ("Motion") filed by Plaintiff Certain Underwriters at Lloyd's, London ("Plaintiff") on July 9, 2010. (Pl.'s Mot. for Default J., ECF No. 11.) ("Mot.") Defendants Qahtan Mohammed Alkabsh and Ahmed Alhajj (collectively, "Defendants") have not responded to the Motion and have not filed an answer to Plaintiff's Complaint. Given Defendants' failure to respond, Plaintiff filed a Motion for Clerk's Entry of Default against them on April 8, 2010. (Pl.'s Mot. for Clerk's Entry of Default, ECF No. 9.) The Clerk made an entry of default on July 6, 2010. (Entry of Default, ECF No. 10.) For the reasons below, the Court GRANTS Plaintiff's Motion.

## I.   Factual Background[1]

Plaintiff issued an insurance policy effective March 29, 2007, and expiring March 29, 2008, covering certain property located at 105 North Church Avenue, Henderson, Tennessee. (Compl. for Declaratory J. ¶ 6, ECF No. 1.) ("Compl.") Quick Stop #2, a convenience store with retail gasoline sales, was the named insured under the policy. (Id.; Ex. B, at ¶ 16, ECF No. 1.) Defendants are sublessees of the property on which Quick Stop #2 is located. (See Ex. B, at ¶¶ 16, 19.) They are owner-operators of an underground storage tank located beneath the property. (See id. ¶¶ 12, 14.)

On January 16, 2009, Bull Market, Inc. ("Bull Market") filed a lawsuit against Defendants in Tennessee state court seeking to recover damages it allegedly sustained through a gasoline leak in the underground storage tank located at the property. (See Compl. ¶¶ 7-8.) Defendants, in turn, filed claims with Plaintiff pursuant to the insurance policy for damages incurred through Bull Market's lawsuit. (See id. ¶ 9.)

The insurance policy excludes coverage for property damage "which would not have occurred in whole or part but for the

---

[1] The facts stated in this Part derive from the well-pleaded factual allegations in the Complaint and the exhibits attached to the Complaint that the Complaint incorporates by reference. See Fed. R. Civ. P. 10(c); Murray v. Lene, 595 F.3d 868, 871 (8th Cir. 2010); Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 614 (6th Cir. 2009); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 296-97 (6th Cir. 2008); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).

actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." (Id. ¶ 17; see also ¶¶ 10-11.)   Gasoline is a pollutant under the policy. (See id. ¶ 17.)   The policy also includes a provision excluding coverage for costs, interest, or damages attributable to punitive or exemplary damages. (See id. ¶ 12.)

Plaintiff requests a declaratory judgment "that there is no coverage for the claims of [Defendants] based on the Total Pollution exclusion in the Policy." (Id. ¶ 18.)   Plaintiff also "request[s] that this Court declare that there is no coverage for the punitive damages claim in the [state lawsuit] based on the Policy's Punitive or Exemplary Damage exclusion." (Id.)

**II.   Standing**

"Standing has three elements."   Fednav, Ltd. v. Chester, 547 F.3d 607, 614 (6th Cir. 2008).   "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."   Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).   "Second, the injury must be 'fairly traceable to the challenged action of the defendant.'"   Id. (quoting Lujan, 504 U.S. at 560).   "Third, it must be likely that the injury will be 'redressed by a favorable decision.'"   Id. (quoting Lujan, 504 U.S. at 561).

3

"The existence of an 'actual controversy' in a constitutional sense is necessary to sustain jurisdiction under the Declaratory Judgment Act." Nat'l Rifle Ass'n of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997) (citations omitted). To determine whether an "actual controversy" exists, courts "must ask whether the parties have 'adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment' even though the injury-in-fact has not yet been completed." Id. at 280 (quoting Golden v. Zwickler, 394 U.S. 103, 108 (1969)). A plaintiff may satisfy that requirement by demonstrating "actual present harm or a significant possibility of future harm," Hyman v. City of Louisville, 53 F. App'x 740, 743 (6th Cir. 2002) (quoting Peoples Rights Org., Inc. v. City of Columbus, 152 F.2d 522, 527 (6th Cir. 1998)), provided the other requirements of standing are satisfied, see White v. United States, 601 F.3d 545, 555 (6th Cir. 2010).

Here, Plaintiff has standing to seek a declaratory judgment. See TIG Ins. Co. v. Merryland Childcare & Dev. Ctr., Inc., No. 04-2666, 2005 WL 3008646, at *2 (W.D. Tenn. Nov. 9, 2005) ("[P]articularly in cases involving insurance coverage, declaratory judgment actions to determine the scope of liability are permissible despite the fact that the exact sums for which the insurer may be liable have not yet been determined.") (quoting Rorer Grp., Inc. v. Home Indem. Co., No. 88-9752, 1990

4

WL 106724, at *4 (E.D. Pa. July 25, 1990)).  Because a lawsuit is currently pending against Defendants and Defendants have filed a claim for insurance coverage against Plaintiff, Plaintiff has demonstrated a significant possibility of future harm that is imminent, concrete, and particularized.  Plaintiff has also demonstrated that the injury is fairly traceable to Defendants' actions and that a declaration about its responsibility to provide coverage would redress that injury. When presented with virtually identical facts, courts have granted declaratory judgments to insurers.  See, e.g., Owners Ins. Co. v. James, 295 F. Supp. 2d 1354, 1360 (N.D. Ga. 2003); Nat'l Am. Ins. Co. v. Coronado, No. 5:03-CV-034-C, 2003 WL 21283516, at *1-2 (N.D. Tex. May 29, 2003); cf. Freeman v. State Farm Mut. Auto. Ins. Co., 436 F.3d 1033, 1034-36 (8th Cir. 2006) (affirming declaratory judgment for an insurer that an exclusion clause in an insurance policy applied to an insured individual's claim).  Therefore, Plaintiff has standing to sue and seek a declaratory judgment.

### III. Jurisdiction and Choice of Law

Defendants have failed to plead or otherwise defend. Nevertheless, the Court must determine whether it has subject-matter jurisdiction and personal jurisdiction before entering a default judgment.  Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986) (per curiam) ("[W]hen entry of a default

judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."); see also Fairlane Car Wash, Inc. v. Knight Enters., Inc., No. 09-1514, 2010 WL 3724604, at *2 (6th Cir. Sept. 15, 2010) ("[O]bjections to subject-matter jurisdiction cannot be waived and must be addressed by a federal court at every stage of proceeding.") (citations omitted); Citizens Bank v. Parnes, 376 F. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment.") (citation omitted). The Court need not consider any defects in venue. See Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 942 (5th Cir. 1999) ("The Supreme Court has made clear that if a party defaults by failing to appear or file a timely responsive pleading, the party waives defects in venue.") (citations omitted); Williams, 802 F.2d at 1202 ("[I]f a party is in default by failing to appear or to file a responsive pleading, defects in venue are waived, a default judgment may be validly entered and the judgment cannot be attacked collaterally for improper venue." (citing Hoffman v. Blaski, 363 U.S. 335, 343 (1960))).

Under 28 U.S.C. § 1332(a), this Court has "original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs" between citizens of different states.   28 U.S.C. § 1332(a)(1).   Plaintiff is a syndicate of insurers with its principal place of business in England.   (Compl. ¶ 1.) Defendants are Tennessee citizens for purposes of diversity jurisdiction.   (See id. ¶ 2-3.)   Complete diversity exists.   See V&M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir. 2010).   The question thus becomes whether the amount-in-controversy requirement is satisfied.

"To defeat diversity jurisdiction, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'"   Charvat v. GVN Mich., Inc., 561 F.3d 623, 628 (6th Cir. 2009) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).   "Generally, the amount claimed by the plaintiff in the complaint rules, as long as claimed in good faith, and '[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.'"   Id. (quoting St. Paul Mercury Indem. Co., 303 U.S. at 289-90); accord Klepper v. First Am. Bank, 916 F.3d 337, 340 (6th Cir. 1990) (citation omitted).   For actions seeking a declaratory judgment, courts measure the amount in controversy by "the value of the object in the litigation."   Northup Props., Inc. v. Chesapeake Appalachia, L.L.C., 567 F.3d 767, 770 (6th Cir. 2009) (quoting Hunt v. Wash.

State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)).  That is "[t]he value of the consequences which may result from the litigation."  Freeland v. Liberty Mut. Fire Ins. Co., No. 10-3038, 2011 WL 338039, at *2 (6th Cir. Feb. 4, 2011) (quoting Lodal, Inc. v. Home Ins. Co. of Ill., No. 95-2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998)).  In an action in which a party seeks a declaratory judgment about insurance coverage, that principle applies.  See id.; see also Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, LLC, 620 F.3d 926, 932 (8th Cir. 2010); Liberty Mut. Fire Ins. Co. v. Yoder, 112 F. App'x 826, 828 (3d Cir. 2004); Hartford Ins. Grp. V. Lou-Con Inc., 293 F.3d 908, 911 (5th Cir. 2002).

Plaintiff asserts that "the amount in controversy exceeds $75,000, exclusive of interest and costs."  (Compl. ¶ 4.) Although Plaintiff has not estimated the amount of damages or provided any factual allegations that would permit the Court to do so, the Court cannot say to a legal certainty that ""[t]he value of the consequences which may result from the litigation" is less than $75,000.  See Freeland, 2011 WL 338039, at *2; Charvat, 561 F.3d at 628; Klepper, 916 F.3d at 340.  Plaintiff has satisfied the amount-in-controversy requirement.  See 28 U.S.C. § 1332(a)(1).  This Court has subject matter jurisdiction based on diversity under 28 U.S.C. § 1332.

In diversity cases, district courts may exercise personal jurisdiction when two requirements are satisfied:

> This court has articulated a two-step inquiry to determine whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause.

Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006) (citation omitted). "Because the Tennessee long-arm statute extends to the constitutional limits of due process, these two inquiries are merged into a single determination of whether the assertion of personal jurisdiction over the defendant in this district violates due process." Key Components, Inc. v. Braille, LLC, No. 3:09-CV-322, 2010 WL 2506670, at *2 (E.D. Tenn. June 16, 2010) (citing Third Nat'l Bank in Nashville v. WEDGE Grp. Inc., 882 F.2d 1087, 1089 (6th Cir. 1989)); see also Exel Transp. Servs., Inc. v. Inter-Ego Sys., Inc., No. W2007-01902-COA-R3-CV, 2008 WL 5263627, at *4 (Tenn. Ct. App. Dec. 18, 2008).

"The Due Process Clause requires that the exercise of personal jurisdiction in each case comport with 'traditional notions of fair play and substantial justice.'" Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "In broad terms, the assertion of personal jurisdiction satisfies due process if 'the defendant

9

purposefully avails itself of the privilege of conducting activities within the forum State,' such that it 'should reasonably anticipate being haled into court there.'" Id. (citations omitted). Under this standard, the Due Process Clause is satisfied if "(1) the Defendant is domiciled in the jurisdiction, (2) the Defendant has been served in the jurisdiction, (3) events giving rise to the cause of action occurred in the jurisdiction, or (4) the Defendant maintains continuous and systematic contacts with the jurisdiction." Goodman v. Bilbry, No. 5:09-CV-192-R, 2010 WL 3810196, at *1 (W.D. Ky. Sept. 23, 2010) (citations omitted).

Here, Defendants are Tennessee residents who purchased an insurance policy for Tennessee property and were personally served in Tennessee. (See Compl. ¶¶ 2-3, 6, 9; Summons 1-3, ECF No. 7; Summons 1-3, ECF No. 8.) Based on these facts, exercising personal jurisdiction over the Defendants satisfies due process. Defendants are domiciled in Tennessee. See Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989); Milliken v. Meyer, 311 U.S. 457, 462-63 (1940); United States v. Henderson, 209 F. App'x 401, 402 (5th Cir. 2006); Patterson v. Latimer Levay Jurasek, LLC, No. 09cv0567-IEG-POR, 2009 WL 1862427, at *1 (S.D. Cal. June 29, 2009). Defendants were physically present in Tennessee at the time of service of process. See Burnham v. Superior Court, 495 U.S. 604, 619

(1990) (plurality opinion); <u>Kadic v. Karadzic</u>, 70 F.3d 232, 246-47 (2d Cir. 1995); <u>Patterson</u>, 2009 WL 1862427, at *1; <u>Carran v. Morgan</u>, 510 F. Supp. 2d 1053, 1057 (S.D. Fla. 2007). Plaintiff's lawsuit arises out of Defendants' Tennessee contacts. <u>See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.</u>, 503 F.3d 544, 550 (6th Cir. 2007). Therefore, the Court has personal jurisdiction over the Defendants.

In a diversity action, state substantive law governs. <u>See</u> <u>Brocklehurst v. PPG Indus., Inc.</u>, 123 F.3d 890, 894 (6th Cir. 1997) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938)). A federal district court is required to apply the choice-of-law rules of the state in which it sits. <u>See</u> <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Montgomery v. Wyeth</u>, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted). "In Tennessee, absent a valid choice of law provision, the rights and obligations under an insurance policy are governed by the law of the state where the insurance policy was 'made and delivered.'" <u>Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.</u>, 225 S.W.3d 482, 485 n.1 (Tenn. Ct. App. 2006) (quoting <u>Ohio Cas. Ins. Co. v. Travelers Indem. Co.</u>, 493 S.W.2d 465, 467 (Tenn. 1973)); <u>accord</u> <u>Yarnell v. Transamerica Life Ins. Co.</u>, 694 F. Supp. 2d 857, 861-62 (E.D. Tenn. 2010); <u>see also</u> <u>In re Estate of Davis</u>, 184 S.W.3d 231, 234 (Tenn. Ct. App. 2004) ("Absent a contractual choice of law provision,

Tennessee courts apply the lex loci rule to contract causes of action.   Accordingly, the substantive law of the state in which the contract was executed governs disputes arising from the contract.") (citation omitted).

Here, the insurance policy attached to the Complaint does not contain a choice of law provision, and the facts stated in the Complaint and attached exhibits demonstrate that the insurance policy was made and delivered in Tennessee.   (See Compl.; Ex. A, ECF No. 1; Ex. B.)   Therefore, the Court will apply Tennessee substantive law.   See Yarnell, 694 F. Supp. 2d at 861-62; Charles Hampton's A-1 Signs, Inc., 225 S.W.3d at 485 n.1; In re Estate of Davis, 184 S.W.3d at 234.

Because this Court has subject matter jurisdiction over Plaintiff's lawsuit and Plaintiff has standing to seek a declaratory judgment, the Court has discretion about whether to exercise jurisdiction over Plaintiff's request.   See Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008); Heydon v. MediaOne of Se. Mich., Inc., 327 F.3d 466, 470 (6th Cir. 2003).   In deciding whether to exercise jurisdiction, this Court considers five factors:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

>     (3) whether the declaratory remedy is being used
> merely for the purpose of "procedural fencing" or "to
> provide an arena for res judicata;"
>
>     (4) whether the use of a declaratory action would
> increase friction between our federal and state courts
> and improperly encroach upon state jurisdiction; and
>
>     (5) whether there is an alternative remedy which is
> better or more effective.

Flowers, 513 F.3d at 554 (quoting Grand Trunk W. R.R. Co. v. Consol. Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984)).

Based on the documents filed with this Court, the coverage dispute between Plaintiff and Defendants is not an issue in the state court action by Bull Market against Defendants. Plaintiff is not a party to that action. The question of Plaintiff's obligation to provide insurance coverage to Defendants is irrelevant to the outcome of that action. No disputed issue of fact addressed by the state court or developed through state court discovery will affect these proceedings. Therefore, the first factor weighs in favor of exercising jurisdiction. See id. at 556; Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 453-54 (6th Cir. 2003); Hartford Cas. Ins. Co. v. TRE Servs., Inc., No. 09-14634, 2011 WL 124496, at *3 (E.D. Mich. Jan. 14, 2011); Auto Owners Ins. Co. v. Aldridge, No. 5:09-CV-00147-KKC, 2009 WL 4782115, at *2-3 (E.D. Ky. Dec. 7, 2009).

Issuing a declaratory judgment would serve a useful purpose in clarifying the legal relations in issue. "Indeed, it is

almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." Flowers, 513 F.3d at 557 (citations omitted). Issuing a declaratory judgment would clarify whether Plaintiff is contractually obligated to cover damages incurred by Defendants in the state court action. Therefore, a declaratory judgment would clarify the legal relationships presented to this Court, and the second factor weighs in favor of exercising jurisdiction. See id.; Northland Ins. Co., 327 F.3d at 453-54; TRE Servs., Inc., 2011 WL 124496, at *3; Aldridge, 2009 WL 4782115, at *2-3.

In considering the third factor, "[w]hen the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" Flowers, 513 F.3d at 558 (quoting Bituminous Cas. Corp. v. J&L Lumber Co., 373 F.3d 807, 814 (6th Cir. 2004)). Plaintiff filed the Complaint after the state proceedings had begun. Plaintiff is not a party to the state court action, and the issue of its insurance coverage of Defendants is not before the state court. "[Plaintiff]'s choice of a federal forum, standing alone, is insufficient to support a finding of an 'improper motive.'" TRE Servs., Inc., 2011 WL 124496, at *4. Therefore, Plaintiff's attempt to clarify its legal obligations to Defendants is not an

14

attempt to create a race to judgment, and the third factor weighs in favor of exercising jurisdiction.  See Flowers, 513 F.3d at 558; Northland Ins. Co., 327 F.3d at 454; TRE Servs., Inc., 2011 WL 124496, at *4; Aldridge, 2009 WL 4782115, at *3.

To determine whether exercising jurisdiction would increase friction between federal and state courts, three additional sub-factors are relevant:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Flowers, 513 F.3d at 560 (quoting Bituminous Cas. Corp., 373 F.3d at 814-15).  The state court's resolution of the factual issues is not necessary for this Court to resolve the declaratory judgment action and will not affect this Court's interpretation of the insurance contract between Plaintiff and Defendants.  Plaintiff is not a party to the state court action, the scope of insurance coverage is not before the state court, and factual findings by this Court will not conflict with findings of the state court.  The coverage dispute in this case can be resolved without making any factual findings that overlap

15

with the findings of the state court.  Therefore, the first sub-factor weighs in favor of exercising jurisdiction.  See id.; Northland Ins. Co., 327 F.3d at 454; TRE Servs., Inc., 2011 WL 124496, at *5; Aldridge, 2009 WL 4782115, at *4.

This Court is in a better position to evaluate the scope of coverage under the insurance policy than the state court.  The facts alleged in the Complaint do not raise a novel issue of state law and the application of state law is clear and straightforward.  Plaintiff is not a party to the state action and the scope of insurance coverage is not before the state court.  Therefore, the second sub-factor weighs in favor of exercising jurisdiction.  See Flowers, 513 F.3d at 560; Northland Ins. Co., 327 F.3d at 454; TRE Servs., Inc., 2011 WL 124496, at *5; Aldridge, 2009 WL 4782115, at *4.

Although state courts are best situated to identify and enforce the public policies that form the basis of insurance regulation, "[n]ot all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." Flowers, 513 F.3d at 561 (citation omitted).  The issue about the scope of coverage under the insurance contract between Plaintiff and Defendants is not novel or complex.  It does not raise unsettled areas of insurance law and does not implicate fundamental public policy concerns.  This Court routinely interprets contractual

16

provisions under Tennessee law.  Therefore, the third sub-factor does not weigh against exercising jurisdiction.  See Northland Ins. Co., 327 F.3d at 454; TRE Servs., Inc., 2011 WL 124496, at *5-6; Aldridge, 2009 WL 4782115, at *4.  On the balance, exercising jurisdiction would not create friction between state and federal courts, and the fourth factor weighs in favor of exercising jurisdiction.

There is not an alternative remedy that is better or more effective than the declaratory action.  The issue of insurance coverage is not before the state court, and there is no reason the state court would be more familiar with that issue than this Court.  This action does not present unique issues of contract or insurance law.  Established precedent provides clear guidance as to the resolution of the legal issue presented.  Therefore, the fifth factor does not weigh against exercising jurisdiction. See Flowers, 513 F.3d at 562; Northland Ins. Co., 327 F.3d at 454; TRE Servs., Inc., 2011 WL 124496, at *6; Aldridge, 2009 WL 4782115, at *5.

Given the balance of factors, this Court will exercise jurisdiction over Plaintiff's declaratory judgment action.  See Flowers, 513 F.3d at 563.

## IV.  Standard of Review

Under Federal Rule of Civil Procedure 55, a party may move for default judgment after obtaining an entry of default.  See

17

Fed. R. Civ. P. 55(a)-(b); New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005); United States ex rel. TTL Assocs. v. Edge Constr. Co., No. 06-14453, 2007 WL 295219, at *1-2 (E.D. Mich. Jan. 26, 2007). A clerk's entry of default against a defendant pursuant to Rule 55(a) does not mean that a plaintiff necessarily prevails and is entitled to any relief demanded in a complaint. See United States v. Conces, 507 F.3d 1028, 1039 (6th Cir. 2007); Conetta v. Nat'l Hair Care Ctrs., Inc., 236 F.3d 67, 76 (1st Cir. 2001). By defaulting, a party only concedes the well-pleaded factual allegations contained in a complaint except those related to damages. See Murray, 595 F.3d at 871; Conces, 507 F.3d at 1038-39; Cross, 441 F. Supp. 2d at 848. After defaulting, "the defendant may still contest a claim on the ground that the complaint does not allege facts that add up to the elements of a cause of action." Conetta, 236 F.3d at 76 (citations omitted); see also Conces, 507 F.3d at 1039 (stating that "entry of a default judgment did not, by itself, necessarily foreclose [defendant] from seeking review as to whether the complaint's allegations were sufficient to state a claim and support a judgment of liability") (citations omitted).

The first step when faced with an entry of default and a motion for default judgment is to determine whether the complaint's factual allegations provide a sufficient legal basis for the entry of a default judgment. See Coach, Inc. v.

18

Cellular Planet, No. 2:09-cv-00241, 2010 WL 1853424, at *3 (S.D. Ohio May 7, 2010) (citation omitted); Krowtoh II LLC v. Excelsius Int'l Ltd., No. 04-505-KSF, 2007 WL 5023591, at *3 (E.D. Ky. Dec. 17, 2007); cf. Gen. Conference Corp. of Seventh-Day Adventists v. McGill, 617 F.3d 402, 407 (6th Cir. 2010) (stating that a default judgment does not preclude review of whether the complaint's allegations, if taken as true, state a claim sufficient to support a judgment of liability).

After doing so, courts may then take the second step of determining the relief to which plaintiffs are entitled. See Vesligaj v. Peterson, 331 F. App'x 351, 355 (6th Cir. 2009); Osbeck v. Golfside Auto Sales, Inc., No. 07-14004, 2010 WL 2572713, at *4-5 (E.D. Mich. June 23, 2010) (citations omitted); Coach, 2010 WL 1853424, at *3 (citation omitted). A hearing is not necessary when determining appropriate relief does not require a court to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. See Fed. R. Civ. P. 55(b)(2); HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 919 (1st Cir. 1988); United States v. DeFrantz, 708 F.2d 310, 312-13 (7th Cir. 1983); Joe Hand Promotions, Inc. v. Willis, No. 5:08 CV 2786, 2009 WL 369511, at *1 (N.D. Ohio Feb. 11, 2009); Coronado, 2003 WL 21283516, at *1-2.

**V.   Analysis**

19

Under Tennessee law, "[i]nsurance policies are contracts and, thus, subject to the same rules of construction that are used to interpret other types of contracts." Spears v. Tenn. Farmers Mut. Ins. Co., 300 S.W.3d 671, 678 (Tenn. Ct. App. 2009) (citation omitted); accord Merrimack Mut. Fire Ins. Co. v. Batts, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001) (citations omitted); Demontbreun v. CNA Ins. Cos., 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991) (citation omitted). "The respective rights of an insured and an insurance company are governed by their contract of insurance." Spears, 300 S.W.3d at 678 (citation omitted). "As with any other contract, courts must give effect to the parties' intentions as reflected in their written contract of insurance." Id. (citations omitted). "In so doing, the insurance policy should be construed as a whole in a reasonable and logical manner, giving the policy's terms, as written, their natural and ordinary meaning." Id. at 679 (citations omitted); see Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn. 1999) (citation omitted).

"While language that is susceptible to more than one reasonable interpretation is ambiguous and should be construed in favor of the insured, 'the courts should not favor either party if the policy's language is unambiguous and free from doubt and should enforce unambiguous policies as written.'" Spears, 300 S.W.3d at 679 (quoting Quintana v. Tenn. Farmers

Mut. Ins. Co., 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989)).  When the policy's language is clear and unambiguous, its literal meaning is controlling in the absence of fraud, overreaching, or unconscionability.  See Maggart v. Almany Realtors, Inc., 259 S.W.3d 700, 704 (Tenn. 2008) (citation omitted); Spears, 300 S.W.3d at 679; Nat'l Ins. Ass'n v. Simpson, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004) (citations omitted); Merrimack Mut. Fire Ins. Co., 59 S.W.3d at 148 (citation omitted).

In insurance contracts, "'the insured is conclusively presumed to have knowledge of, and to have assented to, all the terms, conditions, limitations, provisions or recitals in the policy,' irrespective of whether the insured actually read, or could read, the insurance contract."  Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 274 (Tenn. 2001) (quoting Gen. Am. Life Ins. Co. v. Armstrong, 185 S.W.2d 505, 507 (Tenn. 1945)).  Regardless of whether the insured read his policy, "[i]t is settled law in Tennessee that he is nonetheless charged with knowledge of [its] contents."  Finchum v. Patterson, No. M2007-00559-COA-R3-CV, 2008 WL 2019408, at *7 (Tenn. Ct. App. May 9, 2008) (quoting Reed v. Nat'l Found. Life Ins. Co., No. 03A01-9603-CV-00081, 1996 WL 718467, at *3 (Tenn. Ct. App. Dec. 16, 1996)).

Here, the insurance policy issued by Plaintiff excluded coverage for property damage "which would not have occurred in

21

whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." (Compl. ¶ 17; see also ¶¶ 10-11.) Gasoline is a pollutant under the policy. (See id. ¶ 17.) Defendants filed claims with Plaintiff for damages incurred through Bull Market's lawsuit, which arises from damages allegedly sustained through a gasoline leak in an underground storage tank at the insured property. (See id. ¶¶ 7-9.) The insurance policy clearly and unambiguously excludes coverage for Defendants' claims against Plaintiff. Therefore, this Court must enforce that exclusion and conclude that Plaintiff is not liable for Defendants' claims. See Maggart, 259 S.W.3d at 704; Webber, 49 S.W.3d at 274; Spears, 300 S.W.3d at 679. Having exercised jurisdiction over Plaintiff's lawsuit, this Court will issue a declaratory judgment in Plaintiff's favor stating that there is no coverage under the insurance policy for Defendants' claims arising from the leaking of gasoline at the insured property.

The insurance policy also contains a provision excluding coverage for costs, interest, or damages attributable to punitive or exemplary damages. (See Compl. ¶ 12.) That provision is clear and unambiguous. As such, it is enforceable against Defendants. See Maggart, 259 S.W.3d at 704; Webber, 49 S.W.3d at 274; Spears, 300 S.W.3d at 679. Therefore, this Court

will also declare that there is no coverage for the punitive damages claim in the state lawsuit.

**VI.  Conclusion**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion.   It DECLARES that there is no coverage under the insurance policy for Defendants' claims arising from the leaking of gasoline at the insured property.   It also DECLARES that there is no coverage for the punitive damages claim in the state lawsuit.

So ordered this 15th day of March, 2011.


s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE